<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RALPH MILLS | : | |
| | : | Civil Action No. 05-1744 (FLW) |
| Plaintiff, <u>pro</u> <u>se</u>, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ASST. WARDEN WALKER, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**APPEARANCES**

For Plaintiff:

>   Ralph Mills, Plaintiff <u>pro se</u>
>   14 Cherry Street
>   Bridgeton, NJ 08302

For Defendants:

>   Steven L. Rothman
>   Lipman, Antonelli, Batt, Dunlap, Wodlinger & Gilson
>   110 N. Sixth Street
>   PO Box 729
>   Vineland, NJ 08382-0729

**WOLFSON**, District Judge

  This matter comes before the court on the Motion for Summary Judgement filed by all Defendants, Asst. Warden Walker, Social Worker Siniavsky, and Classification Worker Jacobs. In his one page complaint Ralph Mills, Plaintiff <u>pro</u> <u>se</u>, alleges that defendants violated his constitutional right to access the courts. For the reasons set forth below, the Court grants defendants' motion.

I.       BACKGROUND

Plaintiff pro se Ralph Mills (Plaintiff or Mills) was, at all times relevant to the present proceedings, a detainee at the Cumberland County Jail in Bridgeton, New Jersey. On March 17, 2005, Mills completed an Inmate Request Form and delivered it to Defendant, Classification Officer Jacobs. The Request Form sought to have a letter drafted by Mills, and a newspaper article of unspecified nature, faxed to the Upper Deerfield Court. (Def.'s Br. in Supp. of Summ. J., Ex. A).

Mills' letter asked the court to grant his release on a recognizance bond so that he could attend the funeral of his pastor, Rev. Matthew Brown. The letter explained Mills' relationship to the Rev. Brown; Mills stated that the Reverend "was there for" the Plaintiff and his family throughout the Plaintiff's youth, and also that the Reverend married the Plaintiff and his wife in 1981. (Id.).

Apparently, Plaintiff's letter was not forwarded to the Upper Deerfield Court. In the "Action Taken" portion of the Inmate Request Form it is stated that, "the courts will not consider a furlough for an inmate unless it is a "biological" immediate family member." (Id.)(emphasis in original). This action served to deny Mills both his requested release as well as his request to have the documents sent to the court.

Plaintiff appears to assert in his complaint that the refusal to forward his papers to the court denied Plaintiff of his Constitutional right of access to the courts. (Pl.'s Compl.). Thus, Mills seeks an Order directing the defendants to acknowledge detainees' rights to access the courts as well as $3500 in damages. (Id.).

Defendants respond that the decision whether to grant a prisoner's release for funeral attendance is a power left to prison administrators and, consequently, Mills had no right, nor any expectation of a right, to access the courts for such a request. (Def.'s Br. in Supp. of Summ. J. at 3). Defendants assert that Mills fails to state a claim and move for summary judgement. (Def.'s Mot. for Summ. J.).

Mills did not respond to Defendants' motion. On August 24, 2005, this Court sent both parties a letter noting the pendency of the motion which was returnable August 25, 2005, that opposition was due on July 22, 2005, and since no opposition had been received the motion

would be considered unopposed.  Plaintiff never responded to the communication.  Therefore, this Court will consider Defendants' motion to dismiss Plaintiff's complaint as unopposed.

**II.     DISCUSSION**

    **A. Standard for Summary Judgement**

Summary judgement is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgement as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To avoid summary judgement the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex Corp., 477 U.S. at 324.

A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the evidence, the Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party."  Curley v. Klem, 298 F.3d 271, 276-77 (3rd Cir. 2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3rd Cir 1999)).  Conclusory allegations do not meet the non-moving party's duty to set forth specific facts showing that a genuine issue of material fact exists and a reasonable fact finder could rule in its favor.  Ridgewood Bd. of Ed. v. Stokley, 172 F. 3d 238, 252 (3rd Cir. 1999).

    **B. Standard For Pro Se Complaints**

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-521 (1972); United States v. Day, 969 F.2d 39, 42 (3rd Cir. 1992).  This policy of liberally construing a pro se plaintiff's compliant has led courts "to apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name."  Dluhos v. Strasberg, 321 F.3d 365, 688 (3rd Cir. 2003); see also, Weaver v. Wilcox, 650 F.2d 22, 25-6 (3rd Cir. 1981) (construing plaintiff's complaint to allege a §1983 action even though plaintiff did not explicitly state this as the basis of the claim).

Additionally, the Court must "accept as true all of the allegations in the complaint and all the reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997).  The

Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

Thus, a pro se complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3rd Cir. 1981).

### C. Plaintiff's Complaint Should be Read to Assert a §1983 Claim

Applying the above standards of liberally construing a pro se plaintiff's complaint, Mills' complaint can be read as alleging a cause of action under 42 U.S.C .§1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under §1983, a plaintiff must allege, first, the violation of a right secured by the constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3rd Cir. 1994).

While Mills' complaint does not specifically mention §1983, the asserted basis of jurisdiction is the existence of a "constitutional issue." Read liberally, Mills' complaint alleges a deprivation of his constitutional right to access the courts. As the alleged deprivation of this right occurred at the hands of correctional officers acting pursuant to state statutes and regulations, the prerequisites of a §1983 claim have been met. See Weaver, 650 F.2d at 26 (noting that §1983 is often used to redress constitutional deprivations at prison facilities).

### D. Standard for Access to Court Claims

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has, as a corollary, the requirement that prisoners be afforded access to the courts in order to challenge

unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 412-13, (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3rd Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

However, a prisoner's right to access the courts is not unlimited. The Court's decisions upholding this right, "[do] not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything . . . ," rather, a prisoner's right to access the courts requires only the provision of "the tools . . . inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

As the Court noted in Lewis, the ability of inmates to challenge conditions of confinement is an expansion of the right of access to courts which was previously limited to a direct or collateral attack of an inmate's conviction. Id. at 354. However, in expanding this right the Court "extended this universe of claims only slightly, to "civil rights actions"--*i.e.*, actions under 42 U.S.C. §1983 to vindicate "basic constitutional rights."" Id. (citing Wolff v. McDonnell, 418 U.S. 539, 579 (1974)), Allah v. Seiverling, 229 F.3d 220, 224 (3rd Cir. 2000). Thus, a challenge based on conditions of confinement must be rooted in a civil rights claim; that is, for an inmate to have a right to access the courts to challenge the conditions of confinement, the conditions challenged must violate a constitutionally protected right. Lewis, 518 U.S. at 354, Wolff, 418 U.S. at 579.

### E. Mills' Access to Court Claim

While Mills' request to contact the court was not in regards to a direct or collateral attack on his sentence, it may be read as a challenge to the conditions of his confinement. Construing plaintiff's complaint liberally, Mills' attempt to contact the court seeking release for funeral attendance could be seen as a challenge to the Defendant's policies regarding funeral attendance. To be a cognizable claim under Wolff, a challenge to the conditions of confinement must be based on the violation of a constitutional right. Wolff, 418 U.S. at 579. Accepting the

reasonable inferences from Mills' complaint, the complaint can be read to assert that the Defendants' policies regarding funeral attendance result in deprivation of liberty without due process of law. However, prerequisite to the viability of such a due process claim is the existence of a constitutionally protected liberty interest. See e.g. Sandin v. Conner, 515 U.S. 472, 487 (1995). Thus, Mill's conditions of confinement claim, as well as the underlying access to courts claim, depends on whether there is a constitutionally protected liberty interest in funeral attendance.

      The liberty interests of pretrial detainees differ from the liberty interests of inmates that have been sentenced. Fuentes v. Wagner, 206 F.3d 335, 341-2 (3rd Cir. 2000). While a sentenced prisoner has a liberty interest only in remaining free from "restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, the liberty interests of pretrial detainees are subjected to a higher standard of protection. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). The record before the court does not specify whether Mills was a pretrial detainee or a sentenced prisoner. This lapse is not material, however, since the conditions of confinement challenged by Mills do not implicate a constitutionally protected liberty interest under either standard.

      In Bell, the Court articulated the level of protection afforded to the liberty interests of pretrial detainees: "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think the proper inquiry is whether those conditions amount to punishment of the detainee." Id. at 536. Recognizing the substantial governmental interest in pretrial detention to ensure the accused's availability for trial, the Court states that once the government has exercised this authority, "it obviously is entitled to employ devices that are calculated to effectuate this detention." Bell, 441 U.S. at 537. Acknowledging that such devices typically mean confinement in a facility that restricts the movement of a detainee in a manner in which he would not be restricted if he were free to walk the streets, the Court concludes that "loss of freedom of choice and privacy are inherent incidents of confinement in such a facility." Id.

      Thus, the Court held that "not every disability imposed during a pretrial detention amounts to "punishment" in the constitutional sense." Id. "If a particular condition or restriction

of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." Id., at 539.  A pretrial detainee, then, has a liberty interest only in remaining free from punishment; restrictions on freedom that are reasonably related to a legitimate governmental objective cannot be considered punishment.  Id. at 535-9.

Pursuant to the holding of Bell, restrictions and conditions regulating the circumstances in which an inmate may leave a detention facility are not punishment; rather, such restrictions are "devices that are calculated to effect th[e] detention."  Id. at 537.   As the court noted in Bell, the purpose of the facility, and the detainees' presence in the facility, is detention.  Id.  Without the ability to regulate the conditions under which detainees can leave the facility, the purpose of detention is lost.  The restrictions presently at issue, concerning the ability of detainees to attend funerals outside the detention facility, go directly to the purpose of the confinement; they are calculated to effect the detention itself.  See N.J.S.A. 30:4-8.1 (stating that if such a visit is granted "any such prisoner or inmate shall at all times be in actual custody of . . . the institution wherein he is confined"). Consequently, these restrictions are reasonably related to a legitimate governmental objective and do not constitute punishment.  As the only liberty interest possessed by pretrial detainees is the freedom from punishment, Bell, 441 U.S. 520, Mills has no constitutionally protected liberty interest in the attendance of a funeral as a pretrial detainee.

Similarly, under the Sandin standard for sentenced prisoners there is no liberty interest in release for funeral attendance.  If regulation of the conditions under which detainees can leave the facility go directly to the purpose of the confinement, an inability to obtain release for funeral attendance cannot be seen as a "restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484.  As the Sandin court noted, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights."  Sandin, 515 U.S. at 485 (internal citations omitted). For a limitation or withdrawal to constitute an atypical hardship, the confinement must exceed similar confinement in duration or degree of restriction. Id. at 486.

In New Jersey, the circumstances in which funeral release may be granted are limited by statutes and regulations applicable to all inmates.  N.J.S.A. 30:4-8.1, N.J.A.C. 10A:18-7.2, 7.4.  According to these regulations, even when the conditions permitting funeral attendance are met,

authorization for attendance is not guaranteed as the decision is entirely discretionary. N.J.S.A. 30:4-8.1 ("the chief executive officer of any penal or correctional institution under the jurisdiction of the State Board of Control of Institutions and Agencies may in his discretion, and in conformity with the rules and regulations of the State Board, authorize and permit the attendance of a prisoner or inmate at the bedside or funeral of a dying or deceased relative"). Thus, if a denial of funeral attendance is made pursuant to these regulations it cannot be seen as an atypical hardship exceeding the degree of restriction of similar confinement; instead, such restraint would be one of the ordinary incidents of prison life. Sandin, 515 U.S. at 484-5.

The reference to a ""biological" immediate family member" in the correction facility's denial of Mills' request indicates that its decision was made pursuant to these regulations. See N.J.S.A. 30:4-8.1 (funeral attendance limited to relatives). Since the regulations are facially valid and applicable to all prisoners, the denial does not exceed the normal restrictions governing the conditions of confinement. Consequently, Mills had no protected liberty interest which could form the basis of a conditions of confinement claim, see Lewis, 518 U.S. at 354, and had no constitutional right to access the courts. Id.

### III. CONCLUSION

Defendants' unopposed motion demonstrates that there are no genuine issues of material fact from which a reasonable jury could conclude that Defendants violated Plaintiff's constitutional rights. Accordingly, Defendants' Motion for Summary Judgement is granted.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: October 25 , 2005